ARLLY GAY AND LOUISE GAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gay v. Commissioner
Docket No. 9196-78.
United States Tax Court
T.C. Memo 1980-19; 1980 Tax Ct. Memo LEXIS 564; 39 T.C.M. (CCH) 922; T.C.M. (RIA) 80019; January 23, 1980, Filed Arlly Gay, pro se. Avery Cousins, III, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $3,641 in petitioners' Federal income tax for the year 1976. We must decide: (1) Whether petitioner Arlly Gay is entitled to a deduction of $5,195 for employee business expenses in 1976. (2) Whether petitioners are entitled to deduct $10,523 as a casualty loss in 1976. (3) Whether petitioners are entitled to deduct $768 for miscellaneouw real estate, sales and gasoline taxes. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Arlly Gay and Louise Gay (petitioners) are husband and wife who resided in Macclenny, *566 Florida, at the time they filed their petition in this case. They filed a joint Federal income tax return for the year 1976 with the Internal Revenue Service Center in Chamblee, Georgia. Arlly Gay (petitioner) was employed as a commissioned sales representative for Unijax, Inc. (Unijax), a printing concern, from June 10, 1968 until December 13, 1976. His selling territory for Unijax covered a thirty mile radius around Jacksonville, Florida. He worked a five day week and was not required to travel overnight. He was required to use his own car and to pay his own expenses without reimbursement from Unijax. During the course of the year he drove 25,000 miles in pursuit of his livelihood. Petitioner also incurred various expenditures in taking his customers out for lunch, coffee, and on fishing trips, making business phone calls and purchasing necessary supplies. Petitioner maintained adequate books and records for his expenses until March 4, 1976 when such records were destroyed by a fire in his residence. Petitioner did not maintain any records for the balance of the year. On the 1976 tax return, petitioner claimed $1,003 as an employee business deduction exclusive of automobile *567 costs and claimed $4,192 for his automobile expenses. [1] The respondent has disallowed these deductions. During 1976, petitioner Louis Gay worked for Sears, Roebuck and Company in Jacksonville. She travelled fortyifive miles each way, five days a week, to work. On May 1, 1973 petitioners purchased a mobile home for $11,350. The home had three bedrooms, two baths, living room, dining room, den and kitchen. Petitioners made improvements to the mobile home as follows: Item
Cost
Front and Rear Porch
$1,000
Central Air Conditioner
800
Duct Work and Wiring for
Air Conditioner
280
On March 4, 1976, an apparent electrical fire in the mobile home destroyed or damaged approximately 90 percent of the unit. Petitioners' mobile home and its contents were insured by The Insurance Company of Florida. The policy had a $13,000 limit on liability coverage for the trailer and a $6,500 limit on the contents. *568 The insurance company paid petitioners $10,500 for the trailer and $6,500 for the contents. On the date of the fire the mobile home had an adjusted basis of $13,430 and a fair market value of $14,000. Immediately after the fire, the value of the mobile home was zero. The contents of the home consisted of the following fair market values prior to the fire: Item
Amount
Speed Queen Dryer $ 190
Living Room Suite
450
Cocktail Tables & End Tables
130
Frost-Free Refrigerator
300
Sears Up-right Freezer
300
Dining Room Suite
700
Miscellaneous Groceries
150
Frozen Foods
300
Dishes, Small Appliances, & Kitchen Utensils
500
Kerosene Tank & Stand
70
Five Jackets & Coats
75
Eight Pair of Trousers
64
Eight Shirts
40
Three Pair of Shoes
20
Ten Pair of Underwear
10
Forty Pair of Socks
20
Five Ladies' Coats
100
Three Ladies' Jackets
30
Sixteen Ladies' Pants Suits
280
Fifteen Pair of Ladies' Slacks
150
Fifteen Ladies' Tops
75
Ladies' Underwear
50
Ladies' Lingerie
50
Fifteen Pair of Ladies' Shoes
75
Sixteen Ladies' Purses
75
Thirty Bath Towels
45
Fifteen Hand Towels
15
Thirty Wash Cloths
12
Ten King-Size Sheets
50
Ten King-Size Pillow Cases
10
Two King-Size Pillows
10
One King-Size Bedspread
35
Thirty Regular Sheets
60
Three Regular Blankets
10
Three Regular Spreads
25
Ladies' Hosiery
15
Hair Dryer
15
Polaroid Camera with Case
22.50
Radio
21
Tape Player
30
Four Organ Music Books
15
Perfume and Cosmetics
15
Toys
50
Guitar
12
Four Radios
80
Thirty-Four Records/Albums
50
Ten Pair of Earrings
30
Three Rings & Necklaces
15
Perfume and Cosmetics
21
Scissors and Pinking Shears
21
Sewing Notions and Patterns
250
Double Knit Fabric
250
Jewelry and Cosmetics
225
Girls' Clothes
1,200
12" Portable TV (B&W)
90
King-Size Bedroom Suites
700
Riccaa Sewing Machine and Cabinet
450
12-Gauge Pump Shot Gun
100
30-30 Rifle (Marlin)
80
Tasco 3-9 Rifle Scope
75
Pool Cue
6
8-Track Tape Case
8
Twenty-Four 8-Track Tapes
75
Shoe Shine Kit
8
Two Oak Chairs
30
Three Table Lamps
30
Pair of Western Boots
30
Seven Pair of Dress Shoes
75
Electric Iron
12
Ironing Board
12
AM-FM Digital Clock Radio
50
Small Chest
20
Six Men's Suits
300
Five Sports Coats
100
Nine Dress Trousers
72
Twenty-Five Dress Shirts
125
Twenty-Five Ties
50
Rain Coats/Top Coats
25
Magnavox Home Entertainment Console
700
Sears 19" Color TV
280
Wall Clock
15
Miniature Grandfather Clock
25
Magnus Organ
40
Aquarium
20
Eight Wall Plaques/Pictures
50
Speed Queen Washer
290
Vinyl Sofa
150
Vinyl Chairs
40
Singer Sewing Machine
120
Radio
21
Four Bibles
10
Thirty Spools of Thread
7.50
Toys
5
Two Pair of Scissors
5
Toys
20
Afghan
15
Book Satchel
1
Microscope & Slides
8
Hair Brush
1
Craft Kits
10
Two Bibles
8
Four Necklaces
5
$11,183
*569 Immediately after the fire, the contents of the mobile home had a zero value. In 1976 petitioners paid $69 in real property taxes for the site on which their mobile home was located. They also paid $422 in sales tax during 1976, of which $200 resulted from the purchase of a new mobile home. Petitioners drove their automobiles for 42,000 miles exclusive of the business mileage driven by petitioner and reflected in his deduction for employee transportation expense. [2]
OPINION Issue 1: Employee Business Expenses
Section 162[3] provides that there shall be allowed as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 274 provides that certain business expenditures otherwise allowable under section 162 *570 must meet additional substantive and substantiation requirements in order for such expenditures to be deductible. [4]
*571 Petitioner claims that he expended $61 for business supplies and $140 for long distance business telephone calls. Such expenditures are not subject to the provisions of section 274 and, thus, we may accept as sufficient evidence petitioner's testimony on the amounts expended. In this case, however, we think that petitioner's testimony is little better than a raw estimate. Accordingly, under the doctrine enunciated in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), we conclude that petitioner expended $50 for supplies and $100 for business telephone calls. Petitioner also claims $312 for business lunches, $110 for coffee and $380 for promotional trips. He must substantiate these expenditures under section 274 in order to obtain a deduction. Ordinarily, a taxpayer will satisfy substantiation requirements of section 274 by keeping a contemporaneous account book or diary or by producing documentary evidence (such as receipts or paid bills). Section 1.274-5, Income Tax Regs. In the present case petitioner failed to maintain any records of *572 these expenses subsequent to March 4, 1976. Prior to March 4, 1976, he had kept records of such expenses but they were destroyed by a fire at his residence on March 4, 1976. Although section 1.274-5(c)(5), Income Tax Regs., allows substantiation by reasonable reconstruction if petitioner can show that the absence of records is due to circumstances beyond his control, such as fire, flood or other casualty, petitioner has failed to adequately reconstruct his expenditures for lunches, coffee, and promotional trips incurred prior to March 4, 1976. Accordingly, we sustain respondenths disallowance of such expenses. Finally, the petitioner claims that he drove 32,220 miles as an salesman-employee for Unijax and is therefore entitled to deduct $4,192 as computed under the optional standard rate method in Revenue Procedure 74-23, 1974-2 C.B. 476. However, we think that petitioner's figure improperly includes the mileage between his residence and his first and last *573 business stops of the day. Such mileage is clearly commuting expense and may not be included in the computation under the optional standard rate method. Commissioner v. Florwers,326 U.S. 465 (1946); O'Hare v. Commissioner,54 T.C. 874, 875 (1970); section 262; sections 1.162-2(e), 1.212-1(f), 1.262-1(b)(5), Income Tax Regs.
Since petitioner lived forty-five miles from his employer's office in Jacksonville and serviced a thirty mile radius around Jacksonville, we have reduced the original mileage figure of 32,220 by 7,220 miles to 25,000 miles. Accordingly, petitioner is entitled to compute his automobile expense under the optional standard rate method on the basis of 25,000 miles. [5]
*574 Issue 2: Casualty Loss
Section 165(a) provides that there shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. In the case of an individual, the deduction under section 165(a) is limited by section 165(c) to losses incurred in a trade or business or in any transaction entered into for profit or losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck or other casualty or from theft.
In determining the amount deductible in any casualty loss, Section 1.165-7(b), Income Tax Regs., provides: (b) AMOUNT DEDUCTIBLE--(1) GENERAL RULE. In the case of any casualty loss whether or not incurred in a trade or business or in any trasnsaction entered into for profit, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either -- (i) The amount which is equal to the fair market value of the property immediately *575 before the becasualty reduced by the fair market value of the propery immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in § 1.1011-1 for determing the loss from the sale or other disposition of the property involved. * * *
To determine the fair market value of the property immediately before and after the casualty, section 1.165-7(a)(2), Income Tax Regs. provides: (2) METHOD OF VALUATION. (i) In determining the amount of loss deductible under this section, the fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal. * * * It is clear from the evidence in this case that petitioners sustained a casualty loss on March 4, 1976 when their mobile home and its contents were destroyed by fire. Accordingly, we must determine the amount of casualty loss deduction on the mobile home and its contents. On this record we have determined that the basis of the mobile home was $13,430 immediately before the fire and that the fair market value *576 was in excess of that amount. Since petitioners are limited to the lesser of basis or fair market value in determining the loss deductible, the loss on the mobile home was $13,430 less the $10,500 received as insurance proceeds. [6]
Petitioners' claim that the fair market value of the contents of the mobile home was $17,123 is not supported by the record. First, the amount claimed includes certain items which we have properly reallocated to the basis of the mobile home. Second, many of the values assigned by petitioners to their furnishings, articles of clothing and personal effects do not, in our view, take into account the concept of willing buyer-willing seller in arriving at fair market value. Although we sympathize with petitioners that the items destroyed by fire may have a replacement cost as great as the assigned values, the concept of fair market value is based on what petitioners could get for their used goods from a willing buyer. Thus, exercising our judgment *577 with respect to the various items inventoried, we have reduced the values assigned by petitioners to $11,183. That amount, less the $6,500 insurance reimbursement and the $100 deductible, is the petitioners' deductible loss on the contents of the mobile home. Issue 3: Miscellaneous Taxes
Petitioners contend that they are entitled to conduct real estate tax of $69, sales tax of $422 and a gasoline sales tax of $277 based on 42,000 miles. Respondent challenges these deductions on the ground that petitioners have not adequately substantiated their payment of these taxes or the mileage driven. We disagree with respondent. Although petitioners did not produce specific documents to substantiate the taxes paid and the miles driven necessary to compute the gasoline sales tax deduction, we are satisfied with petitioner's testimony on these issues. First, the real estate tax payment of $69 was clearly for the property on which the mobile home was located. Second, the sales tax deduction was reasonable in light of the amount specified in the sales tax table for 1976 ( $247) and the extraordinary purchase of a replacement mobile home in 1976. Finally, the gasoline sales tax deduction *578 based on 42,000 miles is reasonable given the wife's daily commute of 90 miles and petitioner's commutation mileage not included in his automobile expense deduction. Accordingly, we conclude that petitioners are entitled to deduct in full the $768 claimed on their 1976 income tax return. To reflect the conclusions reached herein, Decision will be entered under Ule 155.
Footnotes
1. The $1,003 claimed by petitioner consists of $312 for business lunches, $61 for supplies, $140 for phone calls, $110 for coffee and $380 for promotional trips. The $4,192 automobile transportation deduction was calculated on the basis of 32,220 miles.↩
2. The 42,000 miles consist of Louise Gay's commuting mileage (450 X 52=23,400 miles), Arlly Gay's commuting mileage (7,220 miles) and an amount of mileage for other personal traveling (11,380 miles).↩
3. All statutory references are to the Internal Revenue Code of 1954, as amended. ↩
4. Section 274 provides in pertinent part: SEC.274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (a) ENTERTAINMENT, AMUSEMENT, OR RECREATION.-- (1) IN GENERAL.--No deduction otherwise allowable under this chapter shall be allowed for any item-- (A) ACTIVITY.--With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or (B) FACILITY.--With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business, and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business. * * * (d) SUBSTANTIATION REQUIRED.--No deduction shall be allowed-- (1) Under section 162 or 212 for any traveling expense (including males and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement,or recreation, or with respect t a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. (e) SPECIFIC EXCEPTIONS TO APPLICATION OF SUBSECTION (a). -- Subsection (a) shall not apply to-- (1) BUSINESS MEALS.--Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion. * * * ↩
5. Respondent asserts that petitioner must satisfy the requirements of section 274 in order to deduct local transportation expenses. Respondent predicates this argument on the premise that "travel" under section 274 includes local transportation expenses. We are not convinced, however, that these expenses are within the purview of the term "travel" for purposes of section 274. Moreover, the respondent's Revenue Procedure 74-23, 1974-2 C.B. 476, clearly distinguishes local automobile transportation from other travel expenses. Under the revenue procedure the employee is required to establish his business mileage (A) for local transportation in accordance with section 1.162-17(d), Income Tax Regs., and (B) for other travel, in accordance with section 1.274-5, Income Tax Regs.↩
6. The $100 limitation will be applied to the loss deductible on the contents of the mobile home. Section 165(c)(3)↩.